IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VICTOR THANKGOD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BELLWETHER BEHAVIORAL HEALTH,<br><br>　　　　Defendant. | Civil No. 19-20617 (RMB/KMW)<br><br>OPINION |

**APPEARANCES**
Jonathan Warren Chase
Law Office of Jonathan W. Chase, LLC
1515 Market Street, Suite 1200
Philadelphia, Pennyslvania 19102

　　*On behalf of Plaintiff*

**RENÉE MARIE BUMB, United States District Judge**

　　This matter comes before the Court upon the filing of a Supplemental Motion for Default Judgment [Docket No. 12] by Plaintiff Victor Thankgod against Defendant Bellwether Behavioral Health. For the reasons set forth herein, the Court will grant Plaintiff's Motion, in part, with additional submissions to be filed.

**I.　　BACKGROUND**

　　In his Complaint, Plaintiff alleges that, while working for Defendant on April 30, 2018, he suffered a fractured right wrist. [Docket No. 1, ¶ 12.] This limited his ability to work, particularly insofar as his job required him to lift heavy items. [*See*

*id.*, ¶¶ 13–14.] Plaintiff required and evidently requested a reasonable accommodation from Defendant—namely that he not be required to do any heavy lifting—which Defendant allegedly denied. [*See id.*, ¶¶ 14–19.] When Plaintiff attempted to return to work several days after the accident wearing a splint, Defendant allegedly told him that "he could not return to work until he was cleared to work without restrictions and without wearing a splint." [*Id.*, ¶ 15.] He therefore alleges that he took a leave of absence of approximately five months, after which he attempted to return to work again. [*Id.*, ¶¶ 16–17.] However, upon that return, he alleges that he still required a reasonable accommodation, which Defendant denied. [*Id.*, ¶¶ 17–19.] Defendant's Senior VP of Human Resources Katherine O'Brien ("Ms. O'Brien") allegedly told Plaintiff that "if he did not return to work in a full-duty capacity, Defendant would consider him to have voluntarily resigned from employment." [*Id.*, ¶ 19.] Thereafter, Plaintiff alleges that he was effectively terminated by Defendant. [*Id.*, ¶ 20.]

Plaintiff filed this lawsuit approximately a year later, on November 22, 2019. [*Id.*] He alleges that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, specifically by discriminating against him, failing to accommodate his disability, and retaliating against him. [*See id.*, ¶¶ 21–27.] Defendant failed to respond or answer Plaintiff's Complaint, despite being properly served. [*See* Docket.] Plaintiff requested that the Clerk of the Court enter Default, which the Clerk did on February 18, 2020. [Docket No. 4.] On April 22, 2020,

Plaintiff filed a Motion for Entry of Default. [Docket No. 5.] This Court denied that Motion without prejudice because it lacked "sufficient proof of service." [Docket No. 6, at 2.] Plaintiff then filed his second Motion for Default Judgment on November 13, 2020. [Docket No. 8.] The Court subsequently administratively terminated that Motion pending supplemental briefing from Plaintiff to address certain deficiencies. [*See* Docket No. 11.] Plaintiff timely filed the currently pending Supplemental Motion on June 3, 2021. [Docket No. 12.] Defendant has not entered an appearance or filed any items on the docket in this case.

## II.   JURISDICTION

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case arises under federal law, namely the ADA.

## III.   LEGAL STANDARD

A plaintiff may seek default judgment in a case in which the Defendant has failed to plead or otherwise defend, and the Clerk of the Court has entered default. *See* FED. R. CIV. P. 55. When the plaintiff's alleged damages are not for a sum certain, it must seek default judgment from the Court. FED. R. CIV. P. 55(b)(2). "[E]ven where a default is entered, the plaintiff is not automatically entitled to the damages she originally demanded." *Harris v. Bennett*, 746 F. App'x 91, 93 (3d Cir. 2018) (citation omitted). As such, once a default is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quotation omitted). But, before a court will grant default judgment, it "may consider whether

3

'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *J&J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (citing *Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008)).

Only once a court determines that a plaintiff is entitled to relief will it consider the "[t]here factors [that] control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Abulkhair v. Office of Attorney Ethics*, 753 F. App'x 132, 134 (3d Cir. 2018) (quoting *Chamberlain v. Giampapa*, 210 F.3d 54, 164 (3d Cir. 2000)).

**IV.   ANALYSIS**

    **A.   Plaintiff Has Stated a Viable ADA Claim**

All of Plaintiff's claims in this case arise under the ADA, which prohibits a "covered entity" from "discriminat[ing] against a qualified individual on the basis of a disability in regard to . . . the . . . discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" is an "employer," which is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." *See id.* § 12111(2), (5)(A). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such

4

individual." *Id.* § 12102(1)(A). "[M]ajor life activities include . . . working." *Id.* § 12102(2)(A).

To state a prima facie case of discrimination under the ADA, a plaintiff "must show that she: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by her employer; and (3) has suffered an adverse employment action as a result of her disability." *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 63 (3d Cir. 2020) (citing *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009)).

Here, Plaintiff's uncontested Complaint and certification establish a prima facie case. First, the Complaint adequately alleges that Plaintiff's fractured right wrist rendered him disabled. [*See* Docket No. 1, ¶ 13; Docket No. 12-2, ¶ 12.] *See also Summers v. Altarium Inst.*, 740 F.3d 325, 330 (4th Cir. 2014) (holding that a plaintiff with a fractured left leg "unquestionably alleged a disability" under the ADA); 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.").

Second, Plaintiff's filings adequately allege that he was "otherwise qualified to perform the essential functions of the job," as he could perform the job with the accommodation that he not be required to lift heavy objects. [*See* Docket no. 12-1, at 7.] Namely, Plaintiff's uncontested assertions indicate that the "essential functions" of the job included "assisting individuals with behavioral, social, housekeeping and other skills; administrative tasks including the preparation of daily, weekly, and

monthly reports; manual tasks including cleaning, heavy liftin such as assisting individuals to and from bed, and transporting individuals to and from outings or scheduled appointments; and administration of medication." [Docket No. 12-2, ¶ 11 (cleaned up).] While his accommodation would have inherently precluded him from doing "heavy lifting," it was nevertheless reasonable and, because he would have been able to perform the other essential functions with that accommodation, he has adequately alleged that he was a qualified individual for ADA purposes.

Third, Plaintiff's uncontested filings adequately allege that he suffered an adverse employment decision—that is, the termination of his employment—as a result of his disability. Plaintiff alleges that his inability to work without restrictions initially led to a forced, five-month leave of absence and eventually led to Defendant's assertion that, "if [Plaintiff] did not return to work in a full-duty capacity, Defendant would consider him to have voluntarily resigned from employment." [Docket No. 1, ¶ 19.] Thereafter, Plaintiff alleges that he was effectively terminated by Defendant. [*Id.*, ¶ 20.]

Finally, the Court notes that Plaintiff has adequately stated that Defendant is a covered entity under the ADA. [*See* Docket No. 12-1, at 5; Docket No. 12-2, ¶¶ 2–3, 10.]

Therefore, the Court finds that Plaintiff has establishd a prima facie case of discrimination under the ADA. As a result, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643–45 (3d Cir. 2015)

6

(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Here, Defendant has failed to appear in the action and has offered no legitimate, nondiscriminatory reason for the termination of Plaintiff's employment. Therefore, Plaintiff has stated a viable ADA discrimination claim.

    B.    **Default Judgment Is Proper**

As noted above, the Court will consider three factors in determining whether to enter default judgment: (1) whether Plaintiff will suffer prejudice if default judgment is not granted; (2) whether Defendant has a meritorious defense; and (3) whether Defendant's delay was the result of culpable misconduct. *Chamberlain*, 210 F.3d at 164.

    1.    **Will Plaintiff suffer prejudice if default judgment is not granted?**

Plainly put, "Plaintiff will be prejudiced absent a default judgment because Defendant['s] failure to respond to Plaintiff's claims leaves Plaintiff with no other means to vindicate [his] claims." *See DeJesus v. Kids Academy, Inc.*, No. 18-13822 (NLH), 2020 U.S. Dist. LEXIS 69224, at *22 (D.N.J. Apr. 21, 2020) (vacated on other grounds). Therefore, this factor cuts in favor of granting default judgment.

    2.    **Does Defendant have a meritorious defense?**

Defendant has not presented any defense to the Court. Therefore, "in the absence of any responsive pleading and based upon the facts alleged [by Plaintiff], Defendant[] do[es] not have a meritorious defense." *See, e.g., Santiago v. Lucky Lodi*

*Buffet Inc.*, No. 15-6147 (MCA), 2016 U.S. Dist. LEXIS 146089, at *6–7 (D.N.J. Oct. 19, 2016).

### 3. Is Defendant's delay in responding the result of culpable misconduct?

It appears to this Court that Defendant's delay in responding—better described at this point as a complete failure to respond—is the result of culpable conduct. "Culpable conduct is dilatory behavior that is willful or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983). Here, Plaintiff served Defendant with both the Complaint and the Request for Entry of Default. [*See* Docket No. 12-1, at 9.] Defendant never responded, and there is no evidence to suggest this failure to respond was for an excusable reason. Therefore, Defendant's failure to appear in this case is willful. *See, e.g.*, *DeJesus*, 2020 U.S. Dist. LEXIS 69224, at *22.

Therefore, the Court finds that default judgment is appropriate here because Plaintiff would be prejudiced if it were not granted, Defendant does not have a meritorious defense at this juncture, and Defendant's delay in responding was the result of culpable misconduct.

### C. Damages

In determining damages pursuant to default judgment, a Court may "conduct hearing or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of

8

damages." FED. R. CIV. P. 55(b)(2); *cf.* FED. R. CIV. P. 55(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."). "[T]he Court may make its determination [regarding damages] by conducting a hearing or by receiving detailed affidavits by the claimant." *E. Elec. Corp. v. Shoemaker Constr. Co.*, 652 F. Supp. 2d 599, at 605 (E.D. Pa. 2009) (first citing *Durant v. Husband*, 28 F.3d 12, 15 (3d Cir. 1994); and then citing *Amresco Financial I L.P. v. Storti*, No. 99-2613, 2000 U.S. Dist. LEXIS 3103 (E.D. Pa. Mar. 13, 2000)).

Here, Plaintiff seeks $52,345.48 in backpay and $4,300 in attorney's fees and costs. [*See* Docket No. 5-4; Docket No. 12-2, ¶ 9.] Plaintiff has submitted detailed affidavits regarding these calculations, and the Court finds that sufficient evidence exists to grant Plaintiff damages in the amount of $4,300 for attorney's fees and costs. [*See* Docket No. 5-4.] However, the Court will require additional briefing with respect to Plaintiff's backpay calculations. It is unclear to the Court how many weeks Plaintiff alleges that he should receive backpay for, which affects the total amount of backpay that Plaintiff would receive.

The Court accepts as true, based on Plaintiff's paystubs for the 4 pay periods immediately preceding his injury, that Plaintiff made an average of $944 per week while employed by Defendant. [*See* Docket No. 8-3.] The Court also accepts that Plaintiff made $12,592.02 in all of 2019 and $3,974.50 between January 1 and

9

February 23, 2020. [*See* Docket No. 8-3.] Therefore, Plaintiff mitigated his damages in the amount of $16,566.52.

The sum of $16,566.52 (the amount mitigated) and $52,345.48 (the amount Plaintiff seeks) is $68,912. That equals the total amount of lost wages that Plaintiff alleges he suffered. The quotient of that number and $944 (Plaintiff's weekly earnings) is 73. That means that Plaintiff is alleging that he is entitled to 73 weeks' backpay (minus the $16,566.52 in mitigated earnings).

Herein lies the Court's confusion. Plaintiff alleges that he was unemployed from November 26, 2018, through the end of 2018—the Court takes judicial notice that this amounts to 5 weeks. [*See* Docket No. 12-2, ¶ 6.] Then, in all of 2019—the Court takes judicial notice of the fact that there are 52 weeks in a year—Plaintiff earned $12,592.02. [*Id.*] Finally, between January 1 and February 23, 2020—the Court takes judicial notice that this amounts to 8 weeks—Plaintiff earned $3,974.50. [*Id.* ¶ 7.] In other words, Plaintiff mitigated his damages in the amount of $16,566.52 over the course of 65 weeks. If Plaintiff had earned $944 per week over that period of time, he would have earned $61,360. Subtracting the $16,566.52 in wages that he earned, which constitute mitigation, Plaintiff would be entitled to only $44,793.48 in backpay. This is $6,608—or 7 weeks' worth, as 6,608 divided by 944 is 7—less than what Plaintiff alleges he is entitled to.

Therefore, the Court remains confused and seeks clarification from Plaintiff in this regard. As the Court has offered several opportunities, fees for this additional submission will not be awarded.

10

## V. CONCLUSION

For the reasons expressed above, the Court will grant Plaintiff's Supplemental Motion for Default Judgment [Docket No. 12], in part, and reserve, in part. An accompanying Order shall issue.

<u>November 8, 2021</u>    <u>s/Renée Marie Bumb</u>
Date                                         Renée Marie Bumb
                                                 United States District Judge